WATERFALL, ECONOMIDIS, CALDWELL,
HANSHAW & VILLAMANA, P.C.
Williams Centre, Suite 800
5210 E. Williams Circle
Tucson, AZ 85711-4482

Barry Kirschner/SBN 005592
bkirschner@wechv.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ALMA ROSA ROBLES | No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; WELLS FARGO & COMPANY LONG-TERM DISABILITY PLAN, | [Assigned to Judge] |
| Defendants. | |

Plaintiff Alma Rosa Robles ("Robles") alleges:

1.     Plaintiff is a participant and claimant in the Wells Fargo & Company Long-Term Disability Plan ("Plan").

2.     Defendant Wells Fargo & Company Long-Term Disability Plan is a disability benefit plan governed pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U. S.C. § 1101, *et seq.*  Jurisdiction of this claim is proper, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

3.     Defendant LIBERTY LIFE ASSURANCE COMPANY OF BOSTON ("Liberty Mutual") is an insurance company which agreed to provide benefits and perform as the Claim Administrator of the Plan.  Decisions made by Liberty Mutual to pay long term disability benefits (LTD) are paid by the insurance company.

## ERISA AND THE WELLS FARGO PLAN

4.     The United States Congress described its purpose in enacting ERISA in 1974:

> "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

5.     A claimant will not become eligible to receive Long Term Disability benefits under the Plan unless (s)he has completed the term of eligibility and been deemed eligible for short term benefits throughout the term.

6.     Decisions which terminate or deny long term disability benefits by Liberty Mutual allow it to keep those funds which would potentially pay benefits in its corporate coffers.

7.     Wells Fargo has a structural conflict of interest in being a fiduciary for purposes of claim administration and having a selfish interest in maintaining funds.

## ALMA ROBLES

8.     Plaintiff is an intended beneficiary and participant of the protections of the Plan as administered through Liberty Mutual.

ERISA § 2, 29 U.S.C. § 1001(b)

9.     Plaintiff was born August 30, 1955.

10.    Plaintiff began employment with Wells Fargo Bank February 3, 2003 in Nogales, Arizona.

11.    By 2008, Plaintiff's achieved the position of Personal Banker at Wells Fargo.

12.    Plaintiff has been unable to work since July 2013.

2

13.    Plaintiff applied for disability benefits.  Her claim for Short Term Disability (STD) total disability benefits was accepted in August 27, 2013.

14.    The disability benefits reflected an onset of disability by August 27, 2013.

15.    Plaintiff's medical conditions include vertigo and vascular loop at the 7th and 8th cranial nerve of the brain.

16.    Robles' balance problems disable her from performing full time the substantial and material duties of her occupation.

## LIBERTY MUTUAL TERMINATES STD BENEFITS

17.    On January 22, 2014, Liberty Mutual wrote Robles, then unrepresented, advising the claimant "During the remainder of the benefit period, we will be reviewing your claim for consideration under the Wells Fargo & Company Long Term Disability (LTD) Policy."

18.    In February 2014, Liberty Mutual in its capacity as claims administrator of the short term disability benefit terminated Robles' benefit prior to the end of the STD term.

19.    Had the Liberty Mutual decision to deprive Robles of the remaining two weeks of her STD benefit not been reversed, Robles would have been denied the opportunity to successfully apply for LTD benefits.

20.    Wells Fargo has a structural conflict of interest in being a fiduciary for purposes of claim administrator of short term disability benefits and having a selfish interest in maintaining funds if the claimant completes the period of short term disability and becomes eligible to receive Liberty Mutual's funds as a long term disability benefit.

21.    By letter of May 1, 2014, Liberty Mutual advised Robles that she could not receive LTD benefits because she had not completed her term of STD benefits.  Liberty Mutual's case manager wrote: "Since Ms. Robles' date of disability was August 27, 2013, and her short term disability benefits were denied beyond February 9, 2014, prior to the

LTD benefit begin date, Long Term Disability benefits were denied." See Exhibit 1, May 1, 2014 letter.

22.    Robles clearly identified her counsel's communication of April 1, 2014 as not an appeal. Liberty treated it as if it were an appeal as evidenced in Liberty letters of April 21, 2014, and April 25, 2014.

23.    **Liberty Mutual denied Robles' appeal even before Robles made an appeal of Liberty's termination of the STD benefit.**

24.    Robles appealed the decision by Liberty Mutual to terminate her STD benefits prior to the end of the STD term.

25.    Robles endured thousands of dollars of expense and legal fees in her attempt to resume the remainder of her STD benefit.

26.    By letter of May 21, 2014, Robles received notice that she would be receiving funds for the remainder of her STD eligible period. Specifically the letter from Plan Administrator Wells Fargo stated: "Your claim for STD benefits has been approved by Liberty Life Assurance Company of Boston (Liberty). You have been approved for STD benefits from 8/27/2013 through 02/24/2014. This is the maximum time allowed under the STD Plan. . . ." See Exhibit 2, May 21, 2014 letter.

## ROBLES CAN NO LONGER CONSISTENTLY PERFORM  HER DUTIES FOR MEDICAL REASONS

27.    Robles' problems are described in the testimony of Beatriz Gallegos Maricela Ramos, Leticia Valenzuela, Cristian Robles, Ramon Valenzuela and Cesar Ramos and are Exhibit 3, disable her from performing full time duties in her own occupation.

28.    Robles is functionally unable to perform her full time employment duties.

29.    Robles' treating physician specialist Dr. A. J. Emami supports her claim for disability and believes that it is medically based.

4

1      30.    Robles has a condition known as vascular loop of the 7th and 8th cranial

2   nerves.

3      31.    Robles' condition of vascular loop of the 7th and 8th cranial nerves has been

4   established by MRI performed September 5, 2013.

5      32.    Medical literature correlates the existence of the vascular loop at the 7th and

6   8th cranial nerve with problems of vertigo and balance.

7      33.    Multiple studies correlate the existence of the vascular loop at the 7th and 8th

8   cranial nerve where Robles has the diagnosis with problems of vertigo and balance.

9      34.    One such study is McCabe, Vascular Loop as a cause of Incapacitating

10  Dizziness, 1989.   This study strongly supports the diagnosis of vascular loop causing

11  severe vertigo.  It advocates surgical correction to alleviate the symptoms of vertigo.

12     35.    Another such study is Neurovascular Decompression of the Eighth Cranial

13  Nerve for Intractable Vertigo and Tinnitus; (Operative Techniques in NeuroSurgery).

14     36.    Another such study is The Value of Endoscopy in the Surgical Management

15  of Vertigo, 2006; The Mediterranean Journal of Otology.

16     37.    Another such study is Top-Down Approach to Vestibular Compensation,

17  Brain Research 2012; National Institute of Health.

18     38.    Another such study is Vertigo - Medical and Surgical Treatment, March 1998

19  article; Michigan Ear Institute Farmington; and

20     39.    Another such study Microvascular Compression Syndrome, Vestibular

21  Paroxysmia, and Quick Spins, 2011, recognizes some disagreement about in whether

22  surgery or other medical management is preferred treatment, with the author noting that

23  surgery seems reasonable as a last resort where individuals have developed medication

24  intolerance.   "The characteristic symptom of nerve irritation is quite common in clinical

25  practice, and it does usually respond to medication.  The controversial part is the origin."

26

40.     All of the studies listed in the preceding paragraphs were listed as support for Robles' December 17, 2014 appeal of the denial of her LTD benefits.   *See* Ex. 4, December 17, 2004 appeal (without exhibits).

41.     In denying Robles' appeal, Liberty Mutual did not address the findings or the research methodology of any of the studies.

42.     The Robles appeal was denied with no more than a statement dismissing the data in these studies as bearing no weight.

> "... The claimant was noted to have enhancing vascular loop of the right 7th and 8th cranial nerves on MRI. However, there is a lack of current, high quality, and abundant scientific literature to support a vascular loop as a cause of vertigo."

43.     Robles was subjected to a physical therapy examination March 27, 2014. The findings of that examination included that Robles "Displayed excessive sway on the eyes closed conditions of the M-CTSIB (Modified Clinical Test of Sensory Interaction on Balance).

44.     The March 27, 2014 physical therapy examination included the clinical finding: "Require two trials to complete the eyes closed/foam surface condition of the M-CTSIB1 indicative of possible vestibular dysfunction. Dizziness (greater than 54%+ severe) (minimal detectable change +18%).

## PROCEDURAL IRREGULARITIES

45.     On or about April 17, 2014. Liberty directly contacted client Alma Robles when it knew that Robles was represented by counsel.

46.     The refusal of Defendants to pay LTD benefits has caused a financial shortfall and financial challenges to Robles.

47.     The procedures of Liberty Mutual in handling the STD and LTD benefits claims and appeals were so extreme that letters needed to be sent to Liberty Mutual, written

1  at expense borne by Robles, to attempt to get the procedural obstacles out of the way to

2  allow a substantive decision on the merits for Robles.

3      48.    Robles, acting through counsel, sent an April 16, 2014 letter correcting a

4  mistaken statement of Liberty Mutual left by telephone message April 16.  Liberty Mutual

5  was, incorrectly, interpreting information sent by counsel as an appeal of the termination of

6  Robles' STD benefits. See Exhibit 5, April 16, 2014 letter to Joy Woods.

7      49.    In spite of the April 16 letter and the explicit language within the April 1

8  submission that it was **not** an appeal, Liberty Mutual sent an April 21, 2014 letter stating

9  that it had received a request for review of an adverse decision on STD benefits.  In other

10  words, Liberty Mutual continued to interpret submissions explicitly labeled as not an

11  appeal, as an appeal.

12      50.    On April 28, 2014, Robles through counsel sent another letter to Liberty

13  Mutual. The text of the two substantive paragraphs are set forth in their entirety:

14      "Attached are letters sent on behalf of my client Alma
Robles April 1, 2014 and April 16, 2014 (without exhibits).  I
15  just received a April 21, 2014 letter stating that Liberty Mutual
is interpreting these letters as a request for review of an adverse
16  short term disability decision.

17      I explained what I thought in each of the previous April
letters.  I stated that the data in those letters were part of a long
18  term disability ("**LTD**") benefits application.  Please confirm
that your company is considering the **LTD** benefit application
19  by Ms. Robles including all materials sent with the April 1 and
April 16 letters.  I would appreciate it if that conformation is in
20  writing, or by e-mail message.  If for any reason you are not
now considering the Robles **LTD** claim for benefits, please
21  explain that and any justification you have for not addressing
that claim which needs to be promptly considered."
22

23      51.    On May 5, 2014 Robles, acting through counsel, sent Exhibit 6 to Joy Woods

24  of Liberty Mutual. The letter explained that *Liberty had denied the Robles STD appeal,*

25  *even though no appeal had ever been filed*.  Were it not for this letter, Liberty Mutual

26

1  would have considered the STD claim terminated and an appeal (which had never been
2  filed) determined adversely to Robles.

3      52.    Procedural irregularities brought to Liberty's attention in the May 5, 2014
4  letter of Robles counsel all needed to be corrected.  As the letter stated: "Please read this
5  communication and the source material carefully.   There is, at a minimum, a mis-
6  communication *which is very expensive for your insured*.  This letter is **not** an appeal or a
7  request for review.  (Italics added, bold in original.)

8      53.    Had the effort and expense absorbed by Robles to correct the procedural
9  irregularities created by Liberty Mutual not been made, the May 19, 2014 letter of Michelle
10 Cole, Liberty Mutual Appeal Review Consultant would not have been sent.  See Exhibit 7,
11 May 19, 2014 Cole letter.

12     54.    Had the effort and expense absorbed by Robles to correct the procedural
13 irregularities created by Liberty Mutual not been made, the procedural irregularities would
14 have prevented Robles from having an opportunity to appeal her STD claim.

15     55.    Had the effort and expense absorbed by Robles to correct the procedural
16 irregularities created by Liberty Mutual not been made, the procedural irregularities would
17 have prevented Robles from having an opportunity to apply and be considered for her LTD
18 benefits.  See Exhibit 1, May 1, 2014 letter.

19     56.    The procedural irregularities created much confusion and expense to Robles,
20 who absorbed the attorneys' fees needed to straighten it out by sending a May 3, 2014
21 letter, attached as Exhibit 6 to this Complaint.

22
23
24
25
26

**ROBLES HAS ABSORBED HARDSHIP AND EXPENSE FOR THE
MISCONDCUCT, SLOPPY PERFORMANCE, AND PROCEDURAL
IRREGULARITES CREATED BY THE BREACH OF DEFENDANTS'
FIDUCIARY DUTIES**

57.    Defendants have created confusion regarding what sources of funds, if used by Robles during the financially difficult period of litigation will result in diminished recovery because of defendants' interpretation of "other income."

58.    Robles has several accounts which will be diminished to allow her financial survival while the LTD benefits dispute with Liberty Mutual is resolved.

59.    Language in the LTD benefits section of the Wells Fargo Corporation *Benefits Book* effective January 1, 2014 (Summary Plan Document or SPD), which was sent by Wells Fargo to Robles' counsel after the disability dispute arose with Liberty Mutual contains the section *Deductible Sources of Income* found on page 12-7.

60.    The interpretation of what is "other income" is important to Robles and retaining value for her disability benefits claim.  If she withdraws funds from certain accounts, the act would essentially be a gift to Liberty Mutual which would be allowed to pay less to her if the civil action begun by this Complaint is resolved in Robles' favor.

61.    A review of the LTD benefits section of the WFC SPD effective January 1, 2013 and specifically the section noted *Deductible Sources of Income* found on page 12-7 suggested that there were ways for Robles to be assisted in financial survival by withdrawal of funds which were identified as Wells Fargo accounts.  See Exhibit 8.

62.    To be certain that Robles was not harming her disability recovery by withdrawing funds from Wells Fargo accounts, counsel for Robles wrote for assistance. See Exhibit 9, March 10, 2015, letter of Barry Kirschner, *Esq.*, requested my assistance in determining adjustments to Long Term Disability (*"LTD"*) benefits payable to Alma Robles from her "base" maximum benefit amount as determined under a LTD Policy held with LIBERTY MUTUAL (*"Insurer"*) available through her employer, WELLS FARGO & COMPANY (*"WFC"*).

9

1    63.    On or about March 26, 2015, the Insurer responded to Mr. Kirschner's

2  March 10, 2015, inquiry.

3    64.    The language cited by Defendants from the Policy of insurance differed

4  substantially in substance from the Corporate Book which functions as a Summary Plan

5  Document.

6    65.    The information provided by the Insurer in response to Mr. Kirschner's

7  March 10, 2015, inquiry (a) did not address the inquiry, and (b) is contrary to the Summary

8  Plan Description section that Mr. Kirschner relied upon in advising Ms. Robles as to

9  retirement plan withdrawals.  On information and belief, Insurer is providing outdated LTD

10  benefit plan documents in response to the Robles inquiry.  To determine the LTD benefits

11  potentially payable to Ms. Robles.

12                                  **COUNT I**

13                          **DECLARATORY JUDGMENT**

14    66.    Robles incorporates all paragraphs above as if fully set forth herein.

15    67.    Defendants have a financial conflict of interest which has influenced LTD

16  decision making adversely to the interests of Robles.

17    68.    Defendants have breached their fiduciary duties by not performing their

18  duties solely in the interests of the participants and beneficiaries and for the exclusive

19  purpose of providing benefits to participants and their beneficiaries as required by ERISA,

20  29 U.S.C. § 1104(A)(1).

21    69.    Defendants have improperly denied the Robles claim for LTD benefits.

22    70.    The hardship caused by being denied LTD benefits has caused Robles to

23  need to trigger early retirement benefits.

24    71.    Robles seeks a declaration by this Court that she is entitled to long term

25  disability benefits, and all other relief including equitable relief for detriment caused

26

1  Robles by procedural irregularities of Defendants, particularly Liberty Mutual, Robles asks
2  for a Declaratory Order that:

3        a.    Robles is entitled to LTD benefits pursuant to her claim;

4        b.    Robles be entitled to LTD back benefits;

5        c.    The relief available to Robles from 29 U.S.C. § 1132(a)(1)(B) is not
6  adequate and

7        d.    Limiting Robles to Section 1132(a)(1)(B) relief would be inequitable.

8        e.    That relief to Robles pursuant to 29 U.S.C. § 1132(a)(3) is proper.

9        f.    Robles be entitled to all other employee-related benefits which she
10  would be entitled to if she had been timely awarded LTD benefits; and any adjustment
11  needed to return Robles to the place she would have been had her LTD benefits been
12  granted; and she not required to absorb the expense of "schooling" Liberty Mutual and its
13  procedural irregularities and breaches of fiduciary duties.

14        g.    Robles be awarded attorneys' fees and costs in appropriate amounts
15  from Defendants;

16        h.    Robles receive all relief appropriate under the circumstances,
17  equitable and/or legal, including what is needed to correct any detrimental the effect on all
18  employee benefits plans which have been related to LTD benefits, or required as a result of
19  the denial of these benefits; and

20        i.    Neither the Plan, Plan Administrator, nor Claim Administrator be
21  unjustly enriched as a result of the denial of timely LTD benefits to Robles.

22        j.    If necessary to accomplish an adequate remedy, reformation of the
23  LTD contract to disallow offset of Robles' retirement or other fund benefits as other
24  income.

25

26

1   WHEREFORE this Court should enter its order declaring that Plaintiff is entitled to

2   back benefits with interest, continuing benefits, attorneys' fees, costs, and all other relief

3   applicable under law or equity.

4   RESPECTFULLY SUBMITTED April *15*, 2015.

5

6   WATERFALL, ECONOMIDIS, CALDWELL,
    HANSHAW & VILLAMANA, P.C.

7

8   By ___ */s/ Barry Kirschner* ___
    Barry Kirschner
9   Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26