IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alma Rosa Robles,<br><br>        Plaintiff,<br><br>v.<br><br>Liberty Life Assurance Company of Boston, et al.,<br><br>        Defendants. | No. CV-15-00160-TUC-DTF<br><br>**ORDER** |

Plaintiff Alma Robles ("Robles") filed a motion for summary judgment [Doc. 43] and Defendant Liberty Life Assurance Company of Boston ("Liberty") filed a motion for summary judgment [Doc. 45]. Oral argument was heard on June 22, 2016. Pursuant to the Court's directive at oral argument, Liberty submitted supplemental briefing on June 27, 2016, 2016 [Doc. 56] and Robles submitted supplemental briefing on June 29, 2016 [Doc. 57]. As more fully set forth below, the Court will grant Robles' motion in part and deny Liberty's motion.

**I.    Background**

At all relevant times Robles was a participant in the Wells Fargo Short Term Disability (STD) and Long Term Disability (LTD) plans. Liberty Life Assurance Company of Boston ("Liberty") is the claims administrator for both the STD and LTD plans. After experiencing episodes of vertigo in July 2013, Robles applied for and was thereafter granted short term disability (STD) benefits. AR000072-73. On April 1, 2014, Robes applied for long term disability (LTD) benefits. AR00460-490. On June 23, 2014,

Liberty denied Robles' application for LTD benefits. AR000359. After exhausting all administrative appeals Robles timely brought suit under the Employee Retirement and Income Security Act ("ERISA") challenging, *inter alia*, the denial of her LTD benefit application. *See* Doc. 6 (Complaint).

## II. ERISA Framework and the Abuse of Discretion Standard

When a plan unambiguously confers discretion to determine eligibility for benefits or to construe the terms of the plan, the district court reviews a denial of benefits for an abuse of discretion. *Pacific Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030 1040-41 (9th Cir. 2014), citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). If there are procedural irregularities or if an administrator operates under a conflict of interest, the district court considers the irregularities or conflict as a factor in determining whether there has been an abuse of discretion. *Id*. at 1040, citing *Abatie*, 458 F.3d at 965, 972. "In all abuse-of-discretion review, whether or not an administrator's conflict of interest is a favor, a reviewing court should consider 'all the circumstances before it,' *Abatie*, 458 F.3d at 968, in assessing a denial of benefits under an ERISA plan." *Id*.

"A plan administrator abuses its discretion if it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination." *Id*., quoting *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641, 649 (9th Cir. 2009). "[T]he test for abuse of discretion in a factual determination […] is whether '[the court] is left with a definite and firm conviction that a mistake has been committed.'" *Id*., quoting *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

Where the abuse of discretion standard applies in an ERISA benefits denial case, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine issue of material fact exists, does not apply." *See Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009), quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.

1999). However, where evidence outside the administrative record is submitted and it is contended that that evidence bears directly on the contours of the abuse of discretion standard, the court is required to consider that evidence in light of the traditional rules of summary judgment. *See Nolan*, 551 F.3d at 1155. Where the court determines that the evidence of bias is not material even when viewed in the light most favorable to the non-moving party, summary judgment remains appropriate. *Id*. at 1155-56.

Here, both parties agree the abuse of discretion standard applies. Both parties have submitted evidence outside the administrative record which they contend bears directly upon the contours of the abuse of discretion standard. As more fully explained below, even after viewing the evidence outside of the administrative record in the light most favorable to the non-moving party the Court determines that the abuse of discretion standard is not tempered sufficiently to change the decision on the merits. Based upon the entirety of the administrative record the Court concludes that Liberty abused its discretion in denying Robles' application for LTD benefits.

### III.   Facts

In 2003, Robles began working at Wells Fargo & Company ("Wells Fargo") as a personal banker. AR000453. As a personal banker, Robles was required to assist Well Fargo customers face to face, over the telephone, and via email. AR000732. Robles was also required to "[d]eal[] with irate customers." *Id*. As a personal banker, Robles was required to sit, stand, and walk "frequently," *e.g.*, for 3 to 6 hours per day. AR000731. Robles was required to work an eight (8) hour day, five (5) days a week. *Id*.

On July 10, 2013, Robles began suffering from intermittent episodes of vertigo. On August 12, 2013, Robles was examined by Dr. A.J. Emami and subsequently diagnosed with recurrent vertigo with associated right sided asymmetrical hearing loss. AR000609. On August 26, 2013, Robles applied for STD benefits. AR000072-73. On September 5, 2013, Robles underwent an MRI of her brain the result of which was "abnormal" and evidenced a "prominent enhancing vascular loop intimate with the right 7th and 8th cranial nerves in the cerebellopontine angle cistern." AR000618. On September 11, 2013, records of Dr. Emami note that Robles suffered from significant

intermittent vertigo that is likely secondary to pressure from the vascular loop. AR000619. Also on September 11, 2013, Liberty accepted and began paying Robles' claim for STD benefits. AR000070.

On September 23, 2013, Dr. Xavier Martinez examined Robles and noted, in relevant part, that Robles suffers from "severe vertigo." AR000683. Two days later, Dr. Emami diagnosed Robles with secondary vestibular disorder. AR000620. On October 13, 2013, Dr. Mindy Black, Assistant Professor, Division of Otolaryngology at the University of Arizona Medical Center, diagnosed Robles as follows, "Mrs. Robles has debilitating vertigo lasting hours for (sic) times per week…I'll book her to see my neurology colleague Dr. Abraham Jacob at UMC for evaluation." AR000641. A month later, on November 13, 2013, Dr. Emami again noted that Robles is experiencing increasing problems with her ears and vestibular neuronitis and prescribed her valium. AR000597. On December 17, 2013, Robles was examined by Dr. Abraham Jacob, at the University of Arizona Ear Institute, and he considered Robles' dizziness to "likely [be] migraine associated dizziness." AR000536.

On January 22, 2014, Liberty advised Robles that her STD benefits have a maximum duration of 25 weeks and that they will end on February 24, 2014. AR000517-518. Liberty further advised that during the STD benefit period it will be examining Robles' claim for consideration under the Wells Fargo LTD policy. *Id*.

On February 6, 2014, Dr. Andrew Schubkegel, of MLS Peer Review Services[1] and engaged by Liberty, issued his report of his review of Robles' medical records. AR000508-515. Dr. Schubkegel opined, in relevant part, that there was no diagnostic testing to determine if the vascular loop noted on Robles' September 5, 2013 MRI is causing her symptoms. AR000514. Dr. Schubkegel further opined that there were no specific reasonably supported restrictions and limitations in activity based upon the

---

[1] Liberty paid MSL Peer Review Services the following: Year 2010 - $3,055,433.75; Year 2011 - $3,458,319.74; Year 2012 - $3,958,075.77; Year 2013 - $3,893,120.74; Year 2014 - $3,738,764.88. *See* Doc. 44-1 (Defendants' Amended Responses to Plaintiff's Requests for Admission, Non-Uniform Interrogatories, and Request for Production of Documents) at pp. 6-7, ll. 26-2.

- 4 -

available medical evidence. *Id.*

On February 11, 2014, relying upon the medical records review report of Dr. Schubkegel Liberty terminated Robles' STD benefits. AR000504-507. Liberty relied upon Dr. Schubkegel's determination that it was not possible to distinguish the exact cause of Robles' recurrent dizziness and Dr. Schubkegel's conclusion that there were no specific reasonably supported restrictions and limitations in activity based on the available medical evidence. AR000505. Robles was advised of her right to file an appeal of Liberty's termination of her STD benefits within 180 days. AR000507.

On February 24, 2014, Dr. Emami again noted that Robles suffered from a significant amount of unremitting dizziness. AR000160. On this same date, Nurse Practitioner Imogene Bell reported that Robles suffers from chronic vertigo "with nausea/falling." AR000488-489. On March 27, 2014, upon referral from Dr. Emami, Robles was evaluated by the Carondelet Rehabilitation Center (Balance Clinic) and was reported as having a 98% perceived handicap due to dizziness on the Dizziness Handicap Inventory. AR000438.

On April 1, 2014, Robles applied for LTD benefits. AR000460-490. In support of her LTD benefits claim, Robles presented to Liberty, *inter alia*, her medical records, six (6) lay witness statements written by family members and friends describing the effect that Robles' vertigo has on her activities of daily living, and articles published in a number of journals that discuss the correlation between vertigo and vascular loop. *Id.* From approximately April 16, 2014 through May 5, 2014, Liberty considered Robles' April 1st LTD benefits application as an appeal of its denial of Robles' STD benefits. AR000418; AR000447; AR000399; AR000407; and AR0003984-397.

On May 21, 2014, Liberty reversed its termination of Robles' STD benefits and approved STD benefits to Robles for the maximum duration. AR000345-347. No reason was provided for the reinstatement of Robles' STD benefits. *Id.* On May 30, 2014, Robles was discharged from outpatient physical therapy through the Carondelet Rehabilitation Center due to lack of progress. AR000165-166.

On June 17, 2014, Dr. Steven Maturo of MLS Peer Review Services[2] who was engaged by Liberty completed his report of his review of Robles' medical records. AR000351-362. In his report, Dr. Maturo opined, *inter alia*, "there is no sufficient current high quality and abundant scientific literature to support vascular loop as a cause of vertigo." AR000354. Dr. Maturo concluded, in relevant part,

> …there are no impairing diagnoses supported by objective findings. The claimant's vertigo complaints are purely subjective. The claimant has undergone diagnostic studies that have all revealed negative findings as it relates to the etiology of her subjective complaints of vertigo…from this reviewer's perspective, based on objective findings the claimant does not have any diagnoses causing impairment that would support the need for restrictions or limitations.

AR000354.

On June 20, 2014, Dr. Emami again noted Robles' persistent dizziness, imbalance and nausea. AR000167. Three days later, on June 23, 2014, Liberty denied Robles' application for LTD benefits. AR000359. Liberty determined that "[b]ased on the medical information in relation to Ms. Robles' occupation requirements, she is able to perform the duties of her Own Occupation. Therefore, she does not meet her policy's definition of disability, and we must deny her claim for benefits." *Id*.

After exhausting her administrative appeal Robles brought this suit under ERISA. *See* Doc. 6.

**IV.  The Plan**

The LTD plan provides, in relevant part, that a covered person will be entitled to receive disability benefits if, as a result of injury or sickness, the covered person is unable to perform, with reasonable continuity, the material and substantial duties of her own occupation. *See* AR000222 & AR000008. At oral argument on the pending motions for summary judgment, counsel for Defendants stated that in order to be eligible to receive LTD benefits Robles would have had to satisfy the definition of disability in the LTD plan during the entire time that Robles was eligible for (and receiving) STD benefits.

---

[2] *See* n.1, *supra*.

According to documents contained in the administrative record, in order to be eligible to receive STD benefits Robles would have to suffer from a medically certified health condition that prevented her from performing the essential functions of her own job as regularly scheduled for longer than the STD waiting period. *See* AR000504.

## V.    Analysis

This Court must consider numerous case-specific factors, including Liberty's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together. *See Montour v. Hartford Life & Accident Ins. Co*., 588 F.3d 623, 630 (9th Cir. 2009), citing *Metro. Life Ins. Co. v. Glenn*, 544 U.S. 105, 128 S.Ct. 2343, 2351-52, 171 L.Ed.2d 299 (2008) (describing the garden variety combination-of-factors method of review). (Quotations omitted.) "Under this rubric, the extent to which a conflict of interest appears to have motivated an administrator's decision is one among potentially many relevant factors that must be considered." *Id*. The Court sets forth its consideration of factors specific to this case below.

<u>Claims Handling</u>

As mentioned above, Robles applied for STD benefits in August 2013 and on September 11, 2013 on her application was granted. AR000070. After obtaining a medical records review report from Dr. Schubkegel Liberty terminated Robles STD benefits effective February 11, 2014. AR000505; AR000508-509. On May 21, 2014, Liberty reversed its position and approved Robles' claim for STD benefits for the full term allowed under the STD plan. *See* AR000345-000347. The May 21st letter granting Robles' STD benefits is silent with respect to what information was relied upon in determining that Robles was again entitled to receive STD benefits. *Id*.

Robles' STD benefits were terminated when Robles had approximately 13 days of STD benefits remaining. Had she exhausted her STD benefits Robles would have administratively transitioned into her LTD benefits claim. *See, e.g*., AR000517-518 (Letter of January 22, 2014, stating, in relevant part, "During the remainder of this [STD] benefit period, we will be reviewing your claim for consideration under the Wells Fargo & Company Longer Term Disability Policy.") With her STD benefits claim terminated

before the expiration of the maximum period allowed Robles was left facing an uphill battle with respect to her LTD benefits claim; namely, Robles now had to (again) establish that she was entitled to STD benefits, this time for the remaining 13 or so days of the STD benefit period.

On May 1, 2014, Liberty informed Robles that her LTD benefit application had been denied on February 11, 2014 – the same date Liberty terminated Robles' STD benefits. *See* AR000407-408. Significantly, however, Robles did not submit her application for LTD benefits until April 1, 2014. AR000460-490. It would take Robles, through her counsel, almost a month of communicating back and forth with Liberty representatives to ensure that Liberty was treating her April 1, 2014 LTD application as such. *See* AR000418; AR000447; AR000399; AR000407; and AR0003984-397.

Additionally, when Robles' counsel requested Robles' claim file and all information as permitted by the regulations governing ERISA, Liberty's response did not include the May 21st letter that told Robles that her STD benefits were being reinstated. A subsequence request by Robles to Wells Fargo also failed to yield the May 21st letter. It was not until October 22, 2014, that Liberty told Robles that it reinstated her STD benefits following its receipt of materials that had been provided to it on April 1, 2014. *See* AR000300-301. As pointed out by Plaintiff's counsel at oral argument on the motions for summary judgment and in Plaintiff's response to Defendants' supplement [Doc. 57], the May 21, 2014 letter reinstating Robles' STD benefits would not even be in the administrative record had it not been for Robles' counsel including the letter with her claim for LTD benefits.

ERISA fiduciaries are obligated to perform their duties "solely in the interests of the participants and beneficiaries […] that is, for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" *See* 29 U.S.C. §§ 1104(a)(1) and (a)(1)(A); *Pacific Shores Hosp.*, 764 F.3d at 1044. "Fiduciaries must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims." *Pacific Shores Hosp.*, 764 F.3d at 1044, quoting *Pegram v. Herdrich*, 530 U.S. 211, 224 n. 6, 120 S.Ct 2143, 147 L.Ed.2d 164 (2000) (quoting 29 U.S.C. § 1104(a)(1)(B)).

The Court finds Liberty to have fallen short in performing its fiduciary obligations to Robles. Liberty has offered no satisfactory reason for the above procedural missteps that have caused Robles to incur the expense (such as increased attorneys' fees) caused by its errors nor has Liberty offered any satisfactory reason for the omission of the May 21st STD benefits reinstatement letter from the administrative record. The May 21st letter is significant as it is a tacit admission by Liberty that it concluded that Robles, as a result of her vertigo, was unable to perform the material and substantial duties of her own job from September 2013 until February 24, 2014. The Court will weigh the foregoing procedural irregularities in determining whether Liberty abused its discretion in denying Robles' LTD benefit application. *See Pacific Shores Hosp.*, 764 F.3d at 1040 ("…we weigh any procedural errors as a factor in determining whether UBH abused its discretion."). Lastly, Defendants have submitted evidence that Liberty has, *inter alia*, "walled off" its claims department from its underwriting department. *See* Doc 50-1 at Ex. 1. Contrary to Defendants' assertion that as a result of Liberty's corporate structuring the conflict of interest is reduced, *see* Doc. 51 at p. 18, ll. 24-26, the Court determines that it will consider Liberty's conflict of interest.

Accordingly, and in light of the foregoing, the Court determines that Liberty's handling of Robles' STD benefits claim weighs in favor of its determination that Liberty abused its discretion in denying Robles' claims for LTD benefits.

The Medical Evidence

As mentioned above, on May 21, 2014, Liberty reinstated Robles' STD benefits **through the maximum period allowed** having determined that Robles had a medically certified health condition that prevented her from doing her own job as regularly scheduled. Liberty had already been evaluating Robles' LTD benefits claim throughout the duration of her STD benefits claim. *See* AR000517-518. Given the terms in the LTD plan regarding a covered person's eligibility for the receipt of LTD benefits, the Court

determines that Liberty abused its discretion in denying Robles' LTD benefits claim. Furthermore, as discussed immediately below, the medical evidence supporting Robles' LTD benefits claim was sufficient to establish that Robles was disabled within the meaning of the LTD plan.

As early as August 12, 2013, Robles was documented by treating physician Dr. Emami as suffering from episodes of vertigo. AR000608-609. On September 5, 2013, after undergoing an MRI of her brain, Robles was documented as suffering from a prominent enhancing vascular loop on the 7th and 8th cranial nerves and medical literature has found a positive correlation between a vascular loop and vertigo. As of February 24, 2014, Robles was reported by nurse practitioner Imogene Bell as suffering from "chronic vertigo with nausea/falling" and that her "problems are balance related with vertigo being the main complaint." AR00048-489. From March 27, 2014 until May 30, 2014, the Carondelet Rehabilitation Center tried, albeit unsuccessfully, to rehabilitate Robles. AR000438; AR0000165-166. The Carondelet Rehabilitation Center discharge summary provides that Robles was referred back to her physician's care due to lack of progress from vestibular rehabilitation "and 'black out' spells after quick motion." AR000166. The Carondelet Rehabilitation Center noted that Robles reported she had suffered (6) episodes of falling since the onset of her vertigo condition. AR000163. On June 20, 2014, three days before Liberty denied Robles' LTD benefits claim, Dr. Emami again noted Robles' "persistent dizziness, imbalance and nausea." AR000167.

Relevant here, as mentioned above, the LTD Plan provides that Robles (as the covered person) will be entitled to receive LTD benefits if she is unable to perform, with reasonable continuity, the material and substantial duties of her own occupation. *See* AR000008. Liberty's initial determination that Robles did not meet the foregoing definition of disability hinged on reviewing physician Dr. Maturo's conclusion that:

> However, there are no impairing diagnoses supported by objective findings. The claimant's vertigo complaints are purely subjective. The claimant has undergone numerous diagnostic studies that have all revealed negative findings as it relates to the etiology of her subjective complaints of vertigo. The claimant was noted to have enhancing vascular loop of the right 7th and

- 10 -

> 8th cranial nerves on MRI. However, there is a lack of current, high quality, and abundant scientific literature to support a vascular loop as a cause of vertigo. In addition, the claimant's physical exam findings do not reveal any significant abnormality nor abnormal/gait balance. Therefore, from this reviewer's perspective, based on objective findings the claimant does not have any diagnoses causing impairment that would support the need for restrictions or limitations.

AR000359. Liberty affirmed its decision to deny LTD benefits to Robles, *see* AR000119-124, relying upon the conclusion of reviewing physician Dr. Bogdasarian, of Medical Consultants Network[3], that:

> … since there were no supported diagnoses, there does not appear to be any objective evidence for impairment and, therefore, no restrictions which could be objectively stated from August 27, 2013 through February 24, 2014 and from February 25, 2014 forward. Based on review of the medical documentation, Ms. Robles has sustained full time work capacity from February 25, 2014 forward due to no visualized vertigo by any health care provider or any objective abnormal findings on audiometric of VNG findings.

AR000123.

The conclusions of Liberty in both of its denial decisions are belied by the objective evidence contained in the administrative record. As a personal banker, Robles was called upon to meet with Well Fargo customers and potential customers face to face, over the phone or via email on a daily basis for a period of eight (8) hours a day, five (5) days a week. As demonstrated by her medical records, Robles' vertigo renders her unable to perform these duties as her condition is documented as being severe, episodic, and lasting for hours. Robles condition is documented as having caused her to have difficulty balancing, standing, and suffering falls. Furthermore, and as mentioned above, given the reinstatement of Robles' STD benefits through the maximum period allowed, Liberty determined that Robles was disabled under the STD plan. Stated another way, Liberty determined that Robles had a medically certified health condition that prevented her from

---

[3] Liberty paid Medical Consultants Network the following: Year 2012 - $956,397.92; Year 2013 - $1,235,722.76; and year 2014 - $1,424,277.04. *See* Doc. 44-1 at p. 6, ll. 18-22.

doing her "own job as regularly scheduled." AR000504.

Based upon the evidence before the Court, the Court determines that the administrative record contained sufficient evidence that as a result of her medical condition Robles was unable to perform the material and substantial duties of her own occupation such that she was entitled to LTD benefits. Liberty's conclusion to the contrary was an abuse of discretion.

Decision to Conduct Only Medical Records Reviews

Drs. Maturo and Bogdasarian conducted reviews of Robles' medical records and ultimately made the determination that there were no restrictions on Robles such that she could perform the material and substantial duties of her occupation. *See* AR000354 (Maturo); AR000132 (Bogdasarian). The choice to conduct only a paper review "raise[s] questions about the thoroughness and accuracy of the benefits determination." *Pacific Shores Hosp.*, 764 F.3d at 1040, quoting *Montour*, 588 F.3d at 634. (Additional citations omitted.) In *Montour*, the United States Court of Appeals for the Ninth Circuit determined that it was unreasonable for Hartford to rely upon the opinions of two reviewing physicians hired by it where one reviewing physician based his conclusion of non-disability, in part, on the lack of objective medical data to support the insured's alleged pain levels and the other reviewing physician rejected the insured's subjective claims of "excess pain" based upon the other reviewing physician's observations. 588 F.3d at 634-35.

Here, Dr. Maturo based his decision that Robles' complaints of vertigo were purely subjective upon the alleged lack of objective medical data to support Robles' complaints of incapacitating vertigo. *See* AR000354. Similarly, Dr. Bogdasarian determined that "[t]here are no objective findings to support a diagnosis of vertigo or to establish a cause of vertigo in Alma Robles." AR000132. While reviewing physicians Maturo and Bogdasarian concluded that Robles' complaints were subjective and/or lack objective supporting data, the record is devoid of any evidence that either physician sought to conduct a physical examination of Robles in an effort to gather objective evidence. In light of the pronouncements in *Pacific Shores* and *Montour*, this Court

- 12 -

concludes that Liberty's failure to engage a physician to examine Robles weighs in favor of a determination that Liberty abused its discretion in denying Robles' claim for LTD benefits.

The Reviewing Physicians' Failure to Discuss Treatment of Robles with Dr. Emami

Both Drs. Maturo and Bogdasarian unsuccessfully attempted to reach Dr. Emami and both completed their medical records review reports without making contact with Dr. Emami. The record indicates that Dr. Maturo attempted to contact Dr. Emami by phone on May 30, June 3, and June 17, 2014. AR000353. The record indicates that Dr. Bogdasarian attempted to reach Dr. Emami by phone on January 26, 28, and 29, 2015. AR000131-132. The record is silent with respect to the nature of the messages left by either Drs. Maturo or Bogdasarian leaving the record silent as to whether Dr. Emami was informed of the purpose or the importance of the calls.

While ERISA has no requirement that an independent reviewer must contact a treating physician, a failure to contact a claimant's treating physician may raise questions about the thoroughness and accuracy of the benefits determination. *See Bennetts v. AT & T Integrated Disability Service Center*, 25 F.Supp.3d 1018 (E.D. Mich 2014), citing *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 168 (6th Cir. 2007). *Bennett* recognized that the reviewing doctor attempted to contact the claimant's physicians "several times, [but] there [wa]s no indication that he informed them of the urgency or the importance of responding to his inquiries." 25 F.Sup.3d at 1030. The district court determined that the reviewing physician's "haste to complete his report without input from [the claimant's treating physician] was unreasonable, and […] weigh[ed] in favor of a finding that his recommendation to deny Bennetts' Long-Term Disability benefits was arbitrary and capricious. *Id*. *See also, James v. A T & T West Disability Benefits Program*, 41 F.Supp.3d 849 (N.D. Cal. 2014) ("Conducting a review of James's eligibility for LTD benefits without the benefit of her treating physicians' input effectively amounts to ignoring a large portion of evidence in James's favor …").

Here, while Drs. Maturo and Bogdasarian both attempted to contact Dr. Emami there is no indication that the messages left with Dr. Emami's staff informed Dr. Emami

of the urgency or the importance to Robles of a reply. Accordingly, the Court determines that Drs. Maturo and Bogdasarian's failure to speak with Dr. Emami prior to preparing their reports weighs in favor of a determination that Liberty abused its discretion in denying Robles LTD benefits application.

Lay Witness Statements

Robles submitted statements from family members and friends describing how Robles' activities of daily living are affected by her vertigo in support of her application for LTD benefits. *See* AR000462-468. For example, Robles' son reports witnessing his mother holding on to the wall to guide herself as she walks around her house. AR000462. Robles' brother reports staying at his sister's home so that she is not alone because Robles' "constant dizziness and difficulty to stay balanced while standing up [was] a great concern[.]"AR000463. Robles' friend describes how she drove Robles to the hospital on two occasions and assisted Robles in and out of the car and to and from her house on these occasions because Robles could not ambulate herself. *See* AR000466. Here, while the medical records reviews of Drs. Maturo and Bogdasarian make note of the existence of the witness statements, neither report credits any of the witness statements as objective evidence of the disabling nature of Robles' vertigo. *See* AR000128-1234 (Bogdasarian) and AR000351-000356 (Maturo).

A plan administrator must provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim. *Taylor v. Reliance Standard Life Ins. Co.*, 837 F.Supp.2d 1194, 1206 (W.D. Wash. 2011), citing 29 C.F.R. § 2560.503-1(h)(2). Lay witnesses can be the source of objective findings as long as their findings could also be observed by the employee's physician. *See, e.g., Peterson v. Federal Express Corp. Long Term Disability Plan*, 2007 WL 1624644, at *27 (D. Ariz. 2007) (administrator's failure to credit corroborative witness statements of claimant's daughters as evidence of disability contributed to the finding that higher scrutiny to the abuse of discretion standard was required, citing *Rekstad v. U.S. Bancorp.*, 451 F.3d 1114, 1121 (10th Cir. 2006)).

Here, the lay witness statements submitted by Robles contained objective findings

that could also have been observed by Robles' physician. *See, e.g.*, AR000462 (statement from Robles' son describing how he witnessed his mother walking by holding onto the wall); AR000466 (statement from Robles' friend describing how she had to drive Robles to the hospital and help her in and out of the car). As mentioned above, while Dr. Maturo's report notes that theses lay witness statements were presented to him for review it appears that Maturo gave them no consideration as Dr. Maturo's report reads, in part, that "her reports are purely subjective." *See* AR000354 ("her reports are purely subjective"). Dr. Bodgasarian's report fails to make any substantive mention of the witness statements. *See* AR000128-134. Liberty's failure to credit multiple witness statements as objective evidence of the disability nature of Robles' vertigo supports this Court's determination that Liberty abused its discretion in denying Robles' claim for LTD benefits.

## VI.   Conclusion

After carefully considering the administrative record, the Court is "left with a definite and firm conviction that a mistake has been made." *See Salomaa*, 642 F.3d at 676. Based upon the evidence contained in the administrative record, the Court determines that Robles was disabled within the meaning of the Plan at least during the time period from her first application for STD benefits through the end of the administrative record and that Liberty's decision to the contrary was an abuse of discretion. Furthermore, there is no reason to conclude that Robles did not continue to be disabled through the 24-month period prescribed in the LTD plan. Accordingly, the Court concludes that Robles is entitled to receive LTD benefits from the beginning of her eligibility through the 24-month period prescribed in the LTD plan. There is not sufficient evidence before the Court to determine whether Robles is "unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." *See* AR 000008. Liberty did not address this specific issue at the administrative level, having determined that Robles did not meet the "unable to perform the Material and Substantial Duties of [her] Own Occupation" in denying Robles LTD benefits under the Plan. *See Id*.

Plaintiff seeks to recover her attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). The Court determines that Plaintiff is entitled to her reasonable attorney's fees and costs.

Accordingly, and for the foregoing reasons,

IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Summary Judgment [Doc. 43] is granted in part. Robles is entitled to: (a) receive long-term disability benefits from the beginning of her eligibility in February 2014 through the 24-month period prescribed in the LTD plan; and (b) recover attorney's fees and costs. The Court remands to Liberty the issue of extending benefits to Robles beyond the 24-month period prescribed in the LTD plan.

2. Defendants' Motion for Summary Judgment [Doc. 45] is denied;

3. Within 10 days of the date of this Order, Plaintiff shall file a motion for attorneys' fees noting it for consideration pursuant to this Court's Local Rules. Defendants shall file any response in accordance with the Local Rules and Plaintiff may file a reply in accord with the same.

4. The Clerk of the Court is directed to enter judgment accordingly and close this case.

Dated this 8th day of July, 2016.

D. Thomas Ferraro
United States Magistrate Judge